THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. TURNER JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 3:21-CV-756-KFP |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff William Turner Jr. filed a Complaint seeking review of the Social Security Administration's decision denying his application for disability, disability insurance benefits, and supplemental security income. Doc. 1. The Court construes Plaintiff's supporting brief (Doc. 12) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) as a motion for summary judgment. The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). Docs. 10, 11.

After scrutiny of the record and the motions submitted by the parties, the Court finds that Plaintiff's motion for summary judgment is due to be DENIED, the Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff was 47 years old when the Administrative Law Judge rendered a decision finding him not disabled. R. 126–27. Plaintiff alleged disability due to gout, low vision in his right eye, a broken left clavicle, and issues with his right wrist and shoulder. R. 48, 272. His initial application was denied, and he requested a hearing before an ALJ. R. 132, 155. Ultimately, the ALJ issued a decision finding Plaintiff not disabled. R. 127. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. *See* 42 U.S.C. § 405(g); R. 7–10.

## II. THE ALJ'S DECISION

The ALJ determined Plaintiff has the following severe impairments: a right wrist fracture; shoulder fractures; a right pec major and deltoid tear with chronic pain in the left shoulder; a history of a right rotator cuff tear and shoulder dislocation; and issues with his left acromioclavicular joint. R. 119. However, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 121. She then found that Plaintiff has the residual functional capacity to perform light work with certain exertional and mental limitations. R. 122.

Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were other jobs in the national economy that Plaintiff could perform, such as a weight recorder, counter clerk, or furniture rental consultant. R. 126–27. The ALJ ultimately concluded that Plaintiff had not been under a disability from August 7, 2017, through the date of the ALJ's decision, November 30, 2020. R. 127.

## III.     STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. Under 42 U.S.C. § 405(g), the Court has jurisdiction to review the Commissioner's decision because Claimant has exhausted his administrative remedies. The Court is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Commissioner's findings of fact are conclusive if the Commissioner supported her findings of fact with substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). When determining whether the Commissioner supported his findings with substantial evidence, the Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence relating to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If the Court determines substantial evidence supports the Commissioner's decision, the Court must affirm—even if the Court finds a preponderance of evidence against the decision. *Id.*

## IV.     DISCUSSION

Plaintiff presents three issues on appeal: (1) the ALJ failed to properly articulate how she considered Dr. Scott Jay Stewart's opinions; (2) the ALJ failed to adequately

3

articulate Dr. Edward Lammons's opinions; and (3) the ALJ failed to fully develop the record. Doc. 12 at 1.

### A. The ALJ's evaluations of Drs. Stewart's and Lammons's opinions do not require remand.

The regulations applicable to claims filed after March 2017 provide the following:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021). An ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Indeed, an ALJ "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Plaintiff seeks remand based on the ALJ's evaluations of Drs. Stewart's and Lammons's medical opinions.[1] Doc. 12 at 9–13. While the ALJ's decision was imperfect, remand is not required on these grounds.

### 1. Although the ALJ failed to properly articulate her consideration of Dr. Stewart's opinion, the error was harmless.

Dr. Stewart performed a consultative psychological evaluation in which Plaintiff's attention and concentration skills, overall cognitive functioning, intellectual functioning, and judgment appeared normal. R. 640. Dr. Stewart also found that Plaintiff's "[m]emory functioning was within functional limits and commensurate with general cognitive functioning"; his "[m]emory for recent and remote events [was] grossly intact"; and his "[s]hort-term auditory memory . . . [was] within normal limits." *Id.* Nevertheless, he opined that Plaintiff's "[w]orking memory appears to be in the defective range based upon a task of mental tracking." *Id.* In addition to diagnosing Plaintiff with anxiety and intermittent explosive disorder, Dr. Stewart opined that Plaintiff had the "interpersonal skills required to relate to others in a work setting, [could] sustain the attention needed to do repetitive tasks[,] and was able to handle the day-to-day pressures of a work environment." R. 641.

The ALJ acknowledged Dr. Stewart's examination and repeated his finding that Plaintiff "appeared to have the interpersonal skills required to relate to others in a work setting, [could] sustain the attention needed to do repetitive tasks[,] and was able to handle the day-to-day pressures of a work environment." R. 121. Aside from these brief

---

[1] At two points, the ALJ referred to Drs. Stewart and Lammons incorrectly by name. She referred to Dr. Stewart as "Dr. Scott Jay Scott" and Dr. Lammons as "Ms. Pope." *See* R. 121, 125. The context of these discussions confirms that these errors are simply typographical. *See id.*

5

acknowledgements, the ALJ did not explicitly discuss Dr. Stewart's opinion. As Plaintiff argues, the ALJ failed to expressly articulate the supportability and consistency factors. *See* Doc. 12 at 9–11. In failing to do so, the ALJ erred.[2] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ's decision shows that she considered Dr. Stewart's opinions in light of the underlying evidence, so any failure to properly articulate the persuasiveness did not impact her ultimate decision. For example, the ALJ considered Plaintiff's anxiety and concluded that it does not support a disability finding as it "does not limit his ability to perform basic mental work activities[.]" R. 120–21. In forming this conclusion, the ALJ determined that Plaintiff's anxiety claims were inconsistent with the evidence—"the objective evidence is not what one would expect for an individual with severe anxiety"—and that the record did not support Plaintiff's allegations—"the record reveals a very limited treatment for the claimant's anxiety." *See* R. 120.

The decision also shows the ALJ considered Dr. Stewart's IED diagnosis. The ALJ explained that Plaintiff's psychological symptoms, which bear relevance to Plaintiff's anxiety and IED diagnoses, did not impair his ability to work. *See id.* She supported this determination with Plaintiff's activities of daily living, which showed Plaintiff was able to

---

[2] The Commissioner argues that the ALJ was not required to state the persuasiveness because Dr. Stewart's observations that Plaintiff "appears" or "seems" to have certain capabilities are not medical opinions. *Id.* In support, the Commissioner cites a single nonbinding and unpublished case. *See* Doc. 15 at 7 (citing *DeJesus v. Comm'r of Soc. Sec.*, No. 6:20-CV-1685-LHP, 2022 WL 833677, at *7 (M.D. Fla. Mar. 21, 2022)). The *DeJesus* court questioned whether findings that a claimant "may" have certain abilities constituted medical opinions, but it went on to evaluate the ALJ's findings under the regulations. *See* 2022 WL 833677, at *7. *DeJesus* does not convince the Court that Dr. Stewart's word choices absolved the ALJ of her duty to comply with the regulations.

live alone, care for animals, visit with family, attend church, shop, and manage his own finances. *Id.* In doing so, the ALJ considered Dr. Stewart's diagnoses and the underlying evidence. The ALJ also measured whether Plaintiff had any marked impairments in light of his mental health symptoms. *See id.* Based on the evidence, the ALJ determined Plaintiff had "**no** limitations in the domains of . . . interacting with others" or "adapting and managing oneself." *See id.* (emphasis in original). Again, these findings indicate the ALJ found Dr. Stewart's diagnoses unsupported by the evidence.

Further, the ALJ indirectly considered Dr. Stewart's opinions by evaluating the other mental health opinion from Dr. Robert Estock. *See* R. 121. Dr. Estock performed a psychiatrist review technique which revealed no unusual behaviors or psychosis; an intact memory within functional limits; intact judgment; average intellectual functioning; and a grumpy mood. *Id.* In reaching his findings, Dr. Estock considered Dr. Stewart's findings. *See* R. 86–87, 106–07 (listing Dr. Stewart as an evaluated medical opinion and recognizing the "CE panelist [Dr. Stewart] gives d[iagnosis] of Intermittent Explosive Disorder and Adjustment Disorder w[ith] Anxiety"). Still, Dr. Estock opined that Plaintiff would not have "more than moderate functional deficits" due to his mental conditions. R. 86, 106. The ALJ found this opinion persuasive because Dr. Estock relied on the evidence of record, thoroughly explained his opinion, and formed an opinion that was consistent with the evidence. R. 121. Because the ALJ's decision illustrates that she considered Dr. Stewart's opinions along with the underlying evidence, compliance with the regulations would not have impacted the ALJ's ultimate decision making this a harmless error. *See Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) ("A harmless error—that is, one that

7

does not affect the ALJ's ultimate decision—does not constitute a ground for reversal.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (incorrect application of regulations may be harmless error if correct application would not change ALJ's ultimate finding); *see also Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) ("Errors may be harmless if they do not prejudice the claimant") (citation omitted). Accordingly, the ALJ's error is harmless. *See C.B. v. Comm'r of Soc. Sec.*, No. 7:21-CV-147 (TQL), 2023 WL 167090, at *4 (M.D. Ga. Jan. 12, 2023) (If an ALJ's decision shows that she considered the relevant opinion and the underlying record evidence, "any failure to articulate would not have impacted h[er] decision" and is, thus, harmless.) (citing *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015)).

Still, Plaintiff claims the error is harmful because Dr. Stewart's findings as to Plaintiff's defective memory and IED cause functional limitations not addressed in the RFC.³ *See* Doc. 12 at 10. But the ALJ was not required to precisely discuss each of Dr. Stewart's findings. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1); *see also Gogel*,

---

³ In his reply brief, and for the first time, Plaintiff argues that the ALJ's error is harmful because Dr. Stewart limited Plaintiff to repetitive tasks, "yet the ALJ's RFC finding contains no limitations for Mr. Turner's ability to maintain attention and concentration." Doc. 19 at 3. Although Plaintiff's initial brief mentions Dr. Stewart's attention limitation, the only specific bases he provides to show harmful error are Dr. Stewart's memory finding and IED diagnosis. *See* Doc. 12 at 10. Accordingly, Plaintiff waived this argument. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681, 683 (11th Cir. 2014) (a party abandons an issue by making only passing references to it or raising it for the first time in a reply brief); *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 655 (11th Cir. 2020) (citation omitted). Regardless, the ALJ's failure to articulate this evaluation does not require remand. Plaintiff's disability request is not based on any condition to which attention is relevant. R. 272. When applying for disability, Plaintiff did not indicate he had any concentration issues; in fact, he wrote that he can sustain attention for "as long as needed[.]" R. 296. Likewise, the hearing transcript does not reveal any attention issues. *See* R. 16–47. Accordingly, discussion of the persuasiveness or consistency of this particular finding would not have impacted the ALJ's ultimate determination. The error is harmless. *See Sarli*, 817 F. App'x at 917 (citing *Diorio*, 721 F.2d at 728).

2021 WL 4261218, at *9 (citing *Dyer*, 395 F.3d at 1211). Moreover, Plaintiff bears the burden of proving the ALJ's error is harmful. *See Senn v. Colvin*, No. 3:11-CV-467-WKW, 2014 WL 4655432, at *2 (M.D. Ala. Sept. 16, 2014) (citing *Diorio*, 721 F.2d at 728; *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Anderson v. Kijakazi*, No 1:20-cv-865-JTA, 2022 WL 3650619, at *4 (M.D. Ala. Aug. 24, 2022) (it is plaintiff's burden to show harmful error) (citation omitted). He has not done so on these two grounds.

Even if the ALJ expressly articulated the supportability and consistency of Dr. Stewart's memory finding, the ALJ's ultimate decision would remain unchanged. Plaintiff did not seek disability based on any conditions to which a memory deficiency is relevant, and he failed to indicate he was suffering from memory issues on his application form. *See* R. 119, 296. Additionally, the hearing transcript is devoid of any details regarding a memory deficiency, *see* R. 16–47, as is Dr. Estock's evaluation, *see* R. 86, 106. Further, while Dr. Stewart observed a defective working memory, he observed a normal functioning memory in all other regards. *See* R. 640. Accordingly, the ALJ's failure to explicitly evaluate Dr. Stewart's lone memory finding did not impact her ultimate determination. The error does not require remand. *See Sarli*, 817 F. App'x at 917 (citing *Diorio*, 721 F.2d at 728).

As explained above, the ALJ's decision shows that she considered Dr. Stewart's IED diagnosis and the underlying evidence, so the proper articulation would not impact her ultimate determination. Moreover, the ALJ imposed stronger—and thus more favorable—social limitations than Dr. Stewart recommended. *See* R. 121. Notably, Dr. Stewart did not impose any restrictions relevant to Plaintiff's IED diagnosis. *See* R. 640–

9

41. In fact, Dr. Stewart found that Plaintiff had the interpersonal skills required to relate to others and handle day-to-day pressures at work. *See id.* However, the ALJ adopted a stricter limitation by restricting Plaintiff to infrequent interaction with others and supportive feedback. R. 121–22. Thus, any failure to articulate her evaluation of Dr. Stewart's IED diagnosis did not prejudice Plaintiff and does not require remand. *See Cooper*, 373 F. App'x at 962 (citation omitted). Although the ALJ's consideration of Dr. Stewart's findings was flawed, the Court is able to discern how she considered the opinions in reaching her ultimate conclusion. The error is harmless.

### 2. The ALJ adequately explained her consideration of Dr. Lammons's opinion.

The evidence from Dr. Lammons consists of two letters titled "Physician's Statement of Care[,]" R. 637, 646–47, and handwritten treatment notes, *see* R. 570–84, 648–66. Dr. Lammons's letters state that he treated Plaintiff's shoulders, right arm, and right knee for several years. *See* R. 637, 646–47. The letters also mention that Plaintiff is "prescribed medications that highly affect[] his ability to work." *See id.* In both letters, Dr. Lammons asserts that Plaintiff is disabled. *See id.*

The ALJ acknowledged Dr. Lammons's lengthy treatment relationship with Plaintiff and concluded that his findings were consistent with the evidence. *See* R. 124. But as it pertained to the letters, the ALJ specified that Dr. Lammons's disability determinations were unpersuasive despite the fact that her opinion was supported by and consistent with the evidence because the opinion decided issues reserved to the Commissioner. R. 125. Plaintiff argues remand is required because the ALJ found Dr. Lammons's opinions both

persuasive and unpersuasive, so the ALJ failed to build a logical bridge from the evidence to her conclusion. Doc. 12 at 13. The Court disagrees. The ALJ properly discounted Dr. Lammons's disability conclusions. *See* 20 C.F.R. § 404.1520b(c)(3) ("[W]e are responsible for making the determination or decision about whether you are disabled"). Her statements that Dr. Lammons's findings are persuasive barring the disability determinations—which the regulations provide are not valuable or persuasive—are not inconsistent or illogical. *See id.* The ALJ was not required to provide any additional discussion of the issue. *See* 20 C.F.R. § 404.1520b(c)(3) ("[W]e will not provide any analysis about how we considered such evidence in our determination or decision" regarding statements on issues reserved to the Commissioner); *see also* 20 C.F.R. § 416.927(d)(1) (opinions on issues reserved to the Commissioner are not medical opinions).

Plaintiff's citation to *Flentroy-Tennant v. Astrue* is unpersuasive. *See* Doc. 12 at 13 (citing No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *15 (M.D. Fla. Mar. 27, 2008)). The ALJ in that case mischaracterized the evidence on multiple occasions and even relied on a doctor's statement that did not exist in the record. *Id.* at *6–8. The *Flentroy-Tennant* court decided that "the numerous misstatements . . . taken as a whole" prevented the court from finding that the ALJ "built the requisite accurate and logical bridge from evidence to the conclusion." *Id.* at 8. Unlike in *Flentroy-Tennant*, the Court is not facing numerous misstatements or mischaracterizations of the evidence. The Court follows the ALJ's logic: Dr. Lammons's findings are persuasive aside from his disability determinations, which the ALJ cannot properly consider. The Court discerns no error on these grounds.

### B. The ALJ complied with her duty to develop the record.

An ALJ "has a basic duty to develop a full and fair record," but the plaintiff "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). If sufficient evidence supports the ALJ's findings, the ALJ has no duty to seek additional medical testimony. *Lett v. Kijakazi*, No. 4:21-CV-105-LSC, 2022 WL 4133301, at *6–7 (N.D. Ala. Sept. 12, 2022) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (finding the ALJ was able to determine disability without seeking clarification from a doctor because she determined other evidence in the record provided sufficient basis on which to make a disability determination). This is true even if the record contains illegible records. *Jones v. Comm'r of Soc. Sec.*, No. 5:15-CV-269-OC-PRL, 2016 WL 4120442, at *3 (M.D. Fla. Aug. 3, 2016) (affirming ALJ's decision despite him disregarding illegible notes because conclusion was supported by substantial evidence); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 879 (11th Cir. 2014) (finding no reversible error regarding illegible doctor's notes "because [the plaintiff did not] show how the ALJ's failure to contact [the doctor] resulted in an unfair proceeding or clear prejudice[;]" on the contrary, the ALJ analyzed four other doctors' findings to support his conclusion).

In evaluating Plaintiff's musculoskeletal impairments, the ALJ considered the entire record, including Dr. Lammons's opinions. *See* R. 123–24. The ALJ wrote that Dr. Lammons "prescribed medication to help alleviate his symptoms, but his notes are illegible and a review of the record reveals no treatment beyond July 2020. (Exhibit 9F)." R. 124.

12

She concluded, "there is no objective evidence offered to show that these conditions cause a significant limitation[.]" *Id.* Despite this, the ALJ limited Plaintiff to light exertional level work with certain exertional restrictions.

Plaintiff argues that the ALJ should not have discredited Plaintiff's wrist complaints on the basis that Dr. Lammons's notes were illegible, and her decision to do so requires remand so that the ALJ can develop these records. Doc. 12 at 13–15. Plaintiff mischaracterizes the ALJ's decision—the ALJ did not discredit Plaintiff's complaints solely because Dr. Lammons's treatment notes were illegible. The ALJ also discounted Plaintiff's complaints because Dr. Lammons's treatment notes showed a lack of recent treatment and because "the record reflects that his surgeries were generally successful in relieving the symptoms." R. 124. These bases alone constitute substantial evidence. *See Martin*, 894 F.2d at 1529.

As discussed above, the evidence from Dr. Lammons includes two letters, R. 637, 646–47, and 32 pages of handwritten treatment notes, R. 570–84, 648–66. In concluding that Dr. Lammons's notes were illegible, the ALJ only references Exhibit 9F, which consists of just 18 pages of treatment notes. *See* R 124; *see also* 648–66. But even if the ALJ determined that all of Dr. Lammons's treatment notes were illegible, she would have still disregarded a relatively small portion of the record—just 32 pages. The ALJ still had over 300 pages of legible records to consult when evaluating Plaintiff's wrist complaints, *see* R. 16–113, 346–570, 585–647, and the ALJ's decision shows that she did consult other portions of the record. For example, the ALJ also evaluated findings from other medical sources who considered Plaintiff's wrist. *See* R. 124–25. Further, the ALJ relied on the

13

hearing testimony, where Plaintiff and the ALJ discussed Dr. Lammons's records, treatments, and diagnoses. *See* R. 17, 21–24, 29–32. Again, these grounds constitute substantial evidence. *See Martin*, 894 F.2d at 1529.

Notably, Plaintiff did not alert the ALJ as to any need to supplement these illegible records at the hearing. *See* R. 16–47. In fact, Plaintiff lodged no objections to admitting Dr. Lammons's records. *See* R. 17 (ALJ: "I have before me presently Exhibit 1A through 9F, which -- 9F are office treatment records from Dr. Edward Lammons . . . . Any objections to what I have before me, Counsel?" ATTY: "No, your Honor.").[4] Plaintiff now raises the issue on appeal without specifying if or how the illegible notes would impact the ALJ's decision. His failure to submit evidence suggesting the illegible notes would have changed the ALJ's decision undermines his argument that remand is necessary. *See generally Jones*, 2016 WL 4120442, at *4 (finding substantial evidence supports decision in part because plaintiff failed to produce evidence that illegible records would have established severe disability). Without more, the Court is disinclined to require further development of these records. Regardless, even if the treatment records were favorable, substantial evidence would still support the ALJ's decision. As such, there is no need for further development of the record. *Lett*, 2022 WL 4133301, at *6–7 (citing *Wilson*, 179 F.3d at 1278).

---

[4] At least one court contends that a failure to object in these instances waives the illegibility issue. *See Shawn v. Kijakazi*, No. 21-80908-CIV, 2022 WL 4235017, at *12–13 (S.D. Fla. Sept. 14, 2022) (stating that plaintiff arguably waived entire illegible notes issue by failing to object at the hearing) (citation omitted).

## V. CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED;

2. The Commissioner's Motion for Summary Judgment (Doc. 15) is GRANTED; and

3. The Commissioner's decision is AFFIRMED.

A final judgment will be entered separately.

DONE this 20th day of March, 2023.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE